UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re | ) Case No. 16-22163-A-7 |
| | ) |
| SYLVIA MAE KINERSON, | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| MICHAEL D. MCGRANAHAN, | ) |
| Chapter 7 Trustee, | ) Adv. No. 16-02134 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SYLVIA MAE KINERSON and STANLEY | ) |
| G. LAFFRANCHINI, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Michael D. McGranahan is the chapter 7 trustee in the bankruptcy case filed by debtor and defendant Sylvia Mae Kinerson. He seeks to avoid a transfer of an undivided 50%

interest in residential real property by defendant Kinerson to her son, defendant Stanley G. Laffranchini.

This avoidance action was consolidated for a court trial on September 6 and 7, 2017, with a second adversary proceeding, Case No. 16-2160, in which the plaintiff seeks the denial of defendant Kinerson's chapter 7 discharge on the ground that she made a false oath when she failed to disclose the transfer of the subject property to defendant Laffranchini.

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(B)(2)(H), in which the court has the constitutional power to enter a final judgment.

## Findings of Fact

1.    The subject property is located at 955 Ebbetts Avenue, Manteca, California and is described as "Lot sixty-three (63), as shown upon Map entitled, TRACT No. 1128, SEQUOIA HOMESITES, UNIT No. 4, filed for record January 28, 1976, in Vol. 21 of Maps and Plats, Page 59, San Joaquin County Records" (hereafter, "the property" or "subject property"). Defendant Kinerson purchased it in 1977.

2.    Defendant Kinerson married Lawrence Kinerson in 1990.

3.    Mick Kinerson is the only child of Lawrence. Defendant Laffranchini is the only child of defendant Kinerson.

4.    On September 5, 2000, defendant Kinerson signed a grant deed transferring an undivided one-half interest in the subject property to defendant Laffranchini. This grant deed was recorded

on September 11, 2000. As a result of this transfer, defendant Kinerson and defendant Laffranchini each owned a 50% undivided interest in the subject property as joint tenants. The plaintiff does not seek to avoid this transfer.

5. In connection with the 2000 transfer, on September 5, 2000 defendant Kinerson signed a Preliminary Change of Ownership Report indicating that the transfer was between a parent and child. In addition, both defendant Kinerson and defendant Laffranchini signed and filed with the San Joaquin County Assessor a Claim for Reassessment Exclusion for Transfer Between Parent and Child. This document, signed under penalty of perjury, confirmed that defendant Kinerson transferred a 50% interest in the subject property to defendant Laffranchini.

6. In 2003, defendant Kinerson and defendant Laffranchini established a $183,254 line of credit with Washington Mutual Bank using the subject property as collateral. In the deed of trust for this loan, recorded on November 12, 2003, defendant Kinerson and defendant Laffranchini represented that they were the co-owners of the subject property.

7. Defendant Kinerson and Lawrence Kinerson filed joint federal tax returns for the years 2007 and 2008 wherein they reported rental income and expenses for the subject property.

8. Defendant Kinerson admitted at trial that she collected rent for the subject property after granting her son an interest in it.

9. In 2010, defendant Laffranchini filed a declaration in his divorce action stating under penalty of perjury that he and defendant Kinerson each were entitled to one-half of the rents

from the property.

10. The foregoing clearly indicates that defendant Kinerson continued to own an undivided 50% interest in the subject property after the 2000 conveyance. As a result of this transfer, the defendants became co-owners of the property.

11. The court does not believe the testimony of defendant Kinerson and defendant Laffranchini to the effect that the 2000 grant deed transferred or was intended to transfer a 100% interest to defendant Laffranchini in exchange for his payment of $75,000.00 to defendant Kinerson together with his agreement to shoulder the responsibility for repaying a $20,000 encumbrance on the property. This consideration, totaling approximately $95,000, was given for a 50% interest only. And, the assertion that defendant Kinerson transferred a 100% is flatly contradicted by the defendants' representations to the assessor and their division of the rents derived from the property.

12. Further, while no party introduced evidence of the market value of the property at the time of the 2000 transfer, the court notes that the $183,254 line of credit obtained by both defendants in 2003 strongly suggests that the $95,000 in consideration given by defendant Laffranchini was for one-half of defendant Kinerson's interest in the property.

13. Lawrence Kinerson died on November 7, 2009. Approximately two months before he died, Lawrence Kinerson filed a petition to dissolve his marriage with defendant Kinerson. However, no divorce was granted prior to his death.

14. Lawrence Kinserson died intestate. Over defendant Kinerson's objection, Mick Kinerson was appointed personal

4

representative of the probate estate (the "administrator") by the Merced County Superior Court.

15.   Defendant Kinerson filed a spousal property petition in the Merced County Superior Court.

16.   The administrator filed a petition under Cal. Probate Code § 850 to confirm assets of the probate estate.  Defendant Kinerson's spousal property petition was consolidated for trial with the administrator's petition.  Cyril Lawrence, attorney at law, represented defendant Kinerson.

17.   Defendant Kinerson and the administrator were locked in litigation for approximately three years.  After a six-day court trial conducted in November and December 2013, on July 10, 2014, the Merced County Superior Court entered a judgment largely in the administrator's favor.

18.   Therefore, the Merced County Superior Court awarded the administrator his reasonable attorney's fees and costs pursuant to Probate Code § 859 and Welfare and Institutions Code § 15657.5 based upon the court's finding that "Sylvia [Kinerson] and/or her son [defendant Laffranchini] unabashedly testified at trial about financial schemes involving unrecorded cash transactions, manipulation of multiple bank accounts, shifting of assets and potential money laundering, tax evasion, perjury, and conspiracy to hide marital assets in dissolution proceedings."

19.   On July 11, 2014, the administrator filed a Memorandum of Costs in the probate case.

20.   Over defendant Kinerson's objection, the administrator was awarded costs of $11,278.20.  These costs remain unpaid.

21.   As of July 8, 2014, the administrator had incurred

attorney's fees in excess of $400,000.  However, the probate
court has not yet determined whether defendant Kinerson must pay
any of these fees.  This determination will be made by the
probate court if defendant Kinerson's bankruptcy discharge is
denied.

22.  On July 28, 2014, defendant Kinerson executed and
recorded a second grant deed which conveyed her remaining
undivided 50% interest in the property to defendant Laffranchini.

23.  On September 9, 2014 and October 20, 2014, defendant
Kinerson and defendant Laffranchini, respectively, signed a Claim
for Reassessment Exclusion for Transfer Between Parent and Child.
This document confirmed that, prior to the 2014 grant deed, the
property had been owned in joint tenancy by defendant Kinerson
and defendant Laffranchini.

24.  In connection with the 2014 grant deed, defendant
Kinerson signed an Affidavit of Exemption from Documentary
Transfer Tax wherein she confirmed under penalty of perjury that
the transfer to defendant Laffranchini was a gift for which no
consideration was paid.

25.  Defendant Kinerson admitted at trial that at the time
she signed the 2014 grant deed she was unable to pay any judgment
in favor of the administrator, whether it was for $100 or
$11,278.20.

26.  The probate judgment was served on Cyril Lawrence on
July 10, 2014.  Mr. Lawrence testified that it is his standard
practice to promptly mail judgments and other orders to his
clients upon his receipt of same.  Mr. Lawrence further testified
that he mailed the judgment to defendant Kinerson and that he met

6

with her to discuss it.

27.  Defendant Kinerson knew of the judgment when she executed the second grant deed on July 28, 2014.

28.  Mr. Lawrence is a creditor of defendant Kinerson.  His fees were in arrears when the second grant deed was given to defendant Laffranchini.  As of that date he was owed more than $40,000.

29.  Defendant Kinerson appealed the July 10, 2014 judgment.  However, on February 22, 2016, the California Court of Appeal affirmed the judgment and the award of costs to the administrator.

30.  This rather antiseptic recitation of the facts does not convey the deep animosity between the administrator and defendant Kinerson.  Hard feelings abound and it is clear that defendant Kinerson executed and recorded the 2014 grant deed for the express purpose of preventing the administrator from collecting a judgment, whether it was for only the costs or for the costs plus his attorney's fees.

31.  Defendant Kinerson filed her bankruptcy petition on April 6, 2016, which was within two years of the execution, delivery, and recording of the 2014 grant deed.

32.  In her response to question 18 of the Statement of Financial Affairs, filed on April 6, 2016, defendant Kinerson indicated that she had not transferred any real property during two years prior to her bankruptcy petition.  She signed the Statement of Financial Affairs under penalty of perjury.

33.  At the May 3, 2016 meeting of creditors, the administrator questioned defendant Kinerson about the 2014 grant

deed.  This was when the plaintiff discovered the 2014 transfer to defendant Laffranchini.  At this meeting of creditors, the plaintiff instructed defendant Kinerson to file an amended Statement of Financial Affairs to disclose the transfer.

34.  On June 2, 2016, defendant Kinerson filed an amended Statement of Financial Affairs.  Once again she responded under penalty of perjury that no transfer had been made within two years of bankruptcy.  However, she qualified her denial by admitting that a July 28, 2014 grant deed had been given to defendant Laffranchini but claiming that it "solemnized" an earlier transfer on September 11, 2000 of her entire interest in the property.  As explained above, the earlier transfer actually transferred, and was intended to transfer, only a 50% interest in the property to defendant Laffranchini.  Defendant Kinerson's response to question 18 in the amended Statement of Financial Affairs was false and was intended to discourage the plaintiff from avoiding the 2014 transfer.

35.  In her amended Statement of Financial Affairs, filed on June 2, 2016, defendant Kinerson also falsely stated under oath that she had used the proceeds from the sale of an annuity to pay a retainer to her state court attorney, Cyril Lawrence, for legal representation in possible bankruptcy litigation.  Mr. Lawrence testified that defendant Kinerson had not paid such a retainer. The court finds that defendant Kinerson made this false statement under oath to avoid turning over these funds to the plaintiff.

36.  To the extent any of the conclusions of law below are findings of fact, they are incorporated by reference as findings of fact.

## Conclusions of Law

37.  To the extent any of the foregoing findings of fact are conclusions of law, they are incorporated by reference as conclusions of law.

38.  The plaintiff, as the bankruptcy trustee, has standing to seek the avoidance of the 2014 transfer by defendant Kinerson of her remaining 50% undivided interest in the property to defendant Laffranchini pursuant to 11 U.S.C. §§ 544(b)(1), 548, and 550.

39.  The 2014 grant deed transferred defendant Kinerson's remaining undivided 50% legal and beneficial interest in the subject property to defendant Laffranchini.  This was a transfer within the meaning of 11 U.S.C. § 101(54)(D)(i) and (ii).  Until that transfer, defendant Kinerson was the owner of a 50% undivided interest in the property.

40.  Both defendants attempted to argue at trial that defendant Laffranchini became the owner of 100% of the subject property as a result of the 2000 transfer.  The court concludes otherwise.  The 2000 transfer gave defendant Laffranchini only a 50% interest in the property.  He acquired the other 50% interest from his mother as a result of the 2014 transfer.

41.  "The owner of the legal title to property is presumed to be the owner of the full beneficial title.  This presumption may be rebutted only by clear and convincing evidence."  See Cal. Evid. Code § 662,   At trial, defendant Kinerson and defendant Laffranchini failed to present clear and convincing evidence that the 2000 grant deed transferred a 100%, not a 50%, interest to defendant Laffranchini.

42.  It is unnecessary, however, to rely only on the defendants' failure to rebut this presumption.  The circumstances clearly demonstrate that defendant Kinerson retained a 50% interest after the 2000 grant deed and gave it up only by executing the 2014 grant deed.  <u>See</u> Findings of Fact, ¶¶ 4 through 12, above.

43.  "A debtor that is generally not paying the debtor's debts as they become due other than as a result of a bona fide dispute is presumed to be insolvent.  The presumption imposes on the party against which the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence."  <u>See</u> Cal. Civ. Code § 3439.02(b).

44.  Defendant Kinerson did not pay the administrator's costs awarded in the judgment and she admitted she was unable to pay them when they were awarded.  These costs are not subject to a bona fide dispute.  Further, defendant Kinerson owed her attorney more than $43,000 in past due legal fees as of July 28, 2014.  The obligation to her attorney is not in bona fide dispute.

45.  At the time of the 2014 transfer, defendant Kinerson had only minimal Social Security income of approximately $1,500 per month.

46.  Defendant Kinerson was insolvent as of July 28, 2014.

47.  Under 11 U.S.C. § 548(a)(1)(A), the bankruptcy trustee may avoid any transfer within two years of the bankruptcy case if made with actual intent to hinder, delay, or defraud any creditor to which the debtor was or became indebted on or after the date that such transfer was made or such obligation was incurred.

48.   Intent to hinder, delay, or defraud creditors may be inferred from circumstances such as:  (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special or close relationship between the debtor and the transferee; (5) the debtor's continued possession and use of the property after the putative transfer.  See Acequia, Inc. v. Clinton (In re Acequia, Inc.), 34 F.3d 800, 805-06 (9th Cir. 1994) and cases cited therein.  The court, however, it not limited to these circumstances when determining the debtor's intent in making the transfer.

49.   In the same vein, Cal. Civ. Code § 3439.04(b) provides that intent to hinder, delay, or defraud creditors may be inferred from facts such as:

> "(1) Whether the transfer or obligation was to an insider.
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
> (3) Whether the transfer or obligation was disclosed or concealed.
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (5) Whether the transfer was of substantially all the debtor's assets.
> (6) Whether the debtor absconded.
> (7) Whether the debtor removed or concealed assets.
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
> (10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred."

50.   These factors, or badges of fraud, are intended "to

provide guidance to the trial court, not compel a finding one way or another." Filip v. Bucurenciu, 129 Cal. App.4th 825, 834, 28 Cal. Rptr. 3d 884 (2005). There is no mathematical formula for applying these factors. No minimum number of factors is required to establish actual intent, and a court may find actual intent based on the evidence in the case even if no badges of fraud are present. Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007).

51. Here, the court concludes that the debtor's intent to hinder, delay, and defraud her creditors, primarily the administrator, is compelled by the following facts:

52. The transfer was to an insider. The term "insider", as used in to 11 U.S.C. § 101(31)(A)(i), includes a relative of the debtor. Defendant Laffranchini is the son of defendant Kinerson. He is an insider. See Cal. Civ. Code § 3439.04(b)(1)).

53. Defendant Kinerson retained possession of the property after the putative transfer. Defendant Kinerson has lived at the property since 2010. Nothing changed after the July 2014 transfer of her remaining 50% interest in the property to defendant Laffranchini. She continued to live in the property. See Cal. Civ. Code § 3439.04(b)(2).

54. Defendant Kinerson concealed the transfer. In her response to question 18 of her original Statement of Financial Affairs, she did not disclose the transfer. In her amended response to that question, defendant Kinerson attempted to mislead the plaintiff and her creditors by falsely stating under oath that the transfer was effective in 2000. See Cal. Civ. Code § 3439.04(b)(3).

55.   Defendant Kinerson made the 2014 transfer while she was embroiled in lengthy and contentious litigation with the administrator, and just 18 days after an adverse judgment was entered against her.   See Cal. Civ. Code § 3439.04(b)(4).

56.   The judgment included an award of costs in favor of the administrator against defendant Kinerson for $11,278.20. Moreover, in the judgment the Superior Court indicated it intended to award the administrator his attorney's fees because defendant Kinerson had concealed marital assets in a dissolution proceeding (Cal. Probate Code § 859) and had committed financial elder abuse (Cal. Welfare & Inst. Code § 15657.5).

57.   Defendant Laffranchini gave no consideration for the 2014 transfer.   This was confirmed by defendant Kinerson under penalty of perjury in the Affidavit of Exemption from Documentary Transfer Tax.   See Cal. Civ. Code § 3439.04(b)(8).

58.   Defendant Kinerson was or became insolvent after the transfer.   Cal. Civ. Code § 3439.04(b)(9).

59.   The transfer occurred soon after a substantial debt was incurred.   The Superior Court entered its judgment against defendant Kinerson in favor of the administrator 18 days prior to the transfer of her remaining 50% interest in the property to defendant Laffranchini.   Defendant Kinerson admitted in her testimony that given her limited income and resources she was unable to pay the $11,278.20 judgment.   See Cal. Civ. Code § 3439.04(b)(10).

60.   The court concludes that defendant Kinerson made the 2014 transfer of an undivided 50% interest in the property to defendant Laffranchini with actual intent to hinder, delay, or

defraud a creditor, namely, the administrator, to which the defendant Kinerson was or became indebted on or before the date that such transfer was made.

61. The transfer on July 28, 2014 of defendant Kinerson's 50% interest in the property to defendant Laffranchini was within two years of the April 6, 2016 bankruptcy petition.

62. The 2014 transfer, in addition to being actually fraudulent, also was constructively fraudulent under 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I) because defendant Kinerson received less than a reasonably equivalent value in exchange for the transfer and she was insolvent or became insolvent as a result of the transfer.

63. Relief under 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(III) is inappropriate because there is no evidence that defendant Kinerson intended to incur debts after the 2014 transfer that were beyond her ability to pay. The debts to the administrator and to her own attorney were incurred before the transfer.

64. A transfer is fraudulent and avoidable pursuant to Cal. Civ. Code § 3439.05 if the creditor's claim arose before the transfer was made if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

65. As the bankruptcy trustee, 11 U.S.C. § 544(b)(1) gives the plaintiff the rights of an actual unsecured creditor under applicable nonbankruptcy law to avoid a fraudulent transfer. Here, California's codification of the Uniform Voidable Transactions Act (Cal. Civ. Code §§ 3439.01 – 3439.14) is the

applicable nonbankruptcy law and, in particular, section 3439.05 is applicable.

66. Here, defendant Laffranchini gave no value for the 2014 transfer of defendant Kinerson's 50% remaining interest in the property, and defendant Kinerson was insolvent at the time of the transfer. In these circumstances, the administrator, as an actual unsecured creditor of defendant Kinerson is permitted by section 3439.05 to avoid the 2014 transfer to defendant Laffranchini. Therefore, the plaintiff may assert the administrator's rights. See 11 U.S.C. § 544(b)(1).

67. Under 11 U.S.C. § 550(a), to the extent that a transfer is avoided under 11 U.S.C. §§ 544 and/or 548, a bankruptcy trustee may recover, for the benefit of the estate, the property transferred or its value from the transferee.

68. The 2014 grant deed was a transfer by defendant Kinerson to defendant Laffranchini that is avoidable pursuant to 11 U.S.C. § 544(b)(1), 11 U.S.C. § 548(a)(1)(A), and 11 U.S.C. § 548(a)(1)(B)(I) and (ii)(I).

69. Defendant Laffranchini is the transferee and the person for whose benefit the transfer was made.

Accordingly, the court will enter a separate judgment finding in favor of the plaintiff on his first claim for relief pursuant to 11 U.S.C. § 548(a)(1)(A), on his second claim for relief pursuant to 11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I), on his fourth claim for relief pursuant to 11 U.S.C. § 544(b)(1) and Cal. Civ. Code § 3439.05, and on the fifth claim for relief under 11 U.S.C. § 550, avoiding the 2014 transfer of an undivided 50%

1    interest in the subject property.  The plaintiff has not

2    requested a judgment for the value of the 50% interest

3    transferred.

4         The plaintiff is the prevailing party and shall recover

5    costs, other than attorney's fees, from defendants Sylvia Mae

6    Kinerson and Stanley G. Laffranchini pursuant to Fed. R. Civ. P.

7    54(d)(1) as incorporated by Fed. R. Bankr. P. 7054.

8         Counsel for the plaintiff shall lodge a conforming judgment.

9    Dated: December 04, 2017              By the Court

10

11

12                                         Michael S. McManus
                                           United States Bankruptcy Judge
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Instructions to Clerk of Court
## Service List – Not Part of Order/Judgment

The Clerk of Court is instructed to send the Order/Judgment or other court generated document transmitted herewith to the parties below. The Clerk of Court will send the Order via the BNC.

Michael D. McGranahan
PO Box 5018
Modesto CA 95352

Stanley G. Laffranchini

Sylvia Mae Kinerson
955 Ebbetts Ave.
Manteca CA 95337

Anthony D. Johnston
1600 G Street. Suite103
Modesto CA 95354

James D. Struck
125 McHenry Avenue
Modesto CA 95354